O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LEE MURILLO,[1]                      )   NO. CV 11-9670-MAN
                                     )
                Plaintiff,           )
                                     )   MEMORANDUM OPINION
        v.                           )
                                     )   AND ORDER
CAROLYN W. COLVIN,[2]                )
Commissioner of Social Security,     )
                                     )
                Defendant.           )
_____ )

        Plaintiff filed a Complaint on November 23, 2011, seeking review of
the denial by the Social Security Commissioner ("Commissioner") of
plaintiff's application for a period of disability, disability insurance
benefits ("DIB"), and supplemental security income ("SSI").  On December
22, 2011, the parties consented, pursuant to 28 U.S.C. § 636(c), to
proceed before the undersigned United States Magistrate Judge.  The

---

[1]     In the Joint Stipulation, it was noted that plaintiff's name
was misspelled in the Complaint.  (Joint Stipulation ("Joint Stip.") at
1.)  According to the Joint Stip., the correct spelling of plaintiff's
surname is Murillo, not Murrillo.  (*Id.*)

[2]     Carolyn W. Colvin became the Acting Commissioner of the Social
Security Administration on February 14, 2013, and is substituted in
place of former Commissioner Michael J. Astrue as the defendant in this
action.  (*See* Fed. R. Civ. P. 25(d).)

parties filed the Joint Stip. on September 4, 2012, in which: plaintiff seeks an order reversing the Commissioner's decision and awarding benefits or, alternatively, remanding for further administrative proceedings; and the Commissioner requests that his decision be affirmed or, alternatively, remanded for further administrative proceedings.

### SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On November 10, 2008, plaintiff filed an application for a period of disability and DIB, and on January 26, 2009, he filed an application for SSI. (Administrative Record ("A.R.") 19.)  In both applications, plaintiff alleged an inability to work since May 1, 2006 (*id.*), due to "diabetes, ne[u]ropathic [pain,] cataracts left and right eye[s]" (A.R. 117) and, subsequently, due to "nerve and muscle damage" (A.R. 144).

The Commissioner denied plaintiff's application on May 28, 2009. (A.R. 53-57.)  On June 10, 2010, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge Edward C. Graham (the "ALJ").  (A.R. 31-50.)  Jeanine Metildi, a vocational expert, also testified.  (*Id.*)  On June 30, 2010, the ALJ denied plaintiff's claim (A.R. 19-27), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 10-12).  That decision is now at issue in this action.

### SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that plaintiff met the insured status requirements of the Social Security Act through December 21, 2010, and had not engaged

in substantial gainful activity from his alleged onset date of May 1, 2006, through the date of the decision.  (A.R. 21.)  The ALJ further determined that plaintiff has the severe impairment of diabetes with neuropathy.  (*Id.*)  The ALJ concluded that the impairment did not meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).  (*Id.*)  After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform "light work as defined in 20 C.F.R. [§§] 404.1567(b) and 416.967(b) except occasionally [he can] climb, balance, stoop, kneel, crouch, and crawl."  (A.R. 22.)

The ALJ also found that plaintiff was unable to perform his past relevant work as a truck driver.  (A.R. 25.)  However, based upon plaintiff's age,[3] education,[4] work experience, and RFC, the ALJ found that other jobs exist in the national economy that plaintiff could perform, including "bench assembler," "hand packager," "electronics worker," "table worker," and "assembler."  (A.R. 26.)  Accordingly, the ALJ concluded that plaintiff has not been under a disability, as defined in the Social Security Act, since May 1, 2006, the alleged onset date of his disability.  (A.R. 27.)

///

///

[3]     On the alleged disability onset date, plaintiff was 45 years old, which is defined as a younger individual.  (A.R. 25; citing 20 C.F.R. §§ 404.1563, 416.963.)

[4]     In his decision, the ALJ found that plaintiff has at least a high school education and is able to communicate in English.  (A.R. 25.)

3

1

2

## STANDARD OF REVIEW

3       Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's

4 decision to determine whether it is free from legal error and supported

5 by substantial evidence.  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir.

6 2007).  Substantial evidence is "'such relevant evidence as a reasonable

7 mind might accept as adequate to support a conclusion.'"  Id. (citation

8 omitted).   The "evidence must be more than a mere scintilla but not

9 necessarily a preponderance."  Connett v. Barnhart, 340 F.3d 871, 873

10 (9th Cir. 2003).   "While inferences from the record can constitute

11 substantial evidence, only those 'reasonably drawn from the record' will

12 suffice."   Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir.

13 2006)(citation omitted).

14

15       Although this Court cannot substitute its discretion for that of

16 the Commissioner, the Court nonetheless must review the record as a

17 whole, "weighing both the evidence that supports and the evidence that

18 detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of

19 Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also

20 Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).   "The ALJ is

21 responsible for determining credibility, resolving conflicts in medical

22 testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d

23 1035, 1039 (9th Cir. 1995).

24

25       The Court will uphold the Commissioner's decision when the evidence

26 is susceptible to more than one rational interpretation.   Burch v.

27 Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  However, the Court may

28 review only the reasons stated by the ALJ in his decision "and may not

4

affirm the ALJ on a ground upon which he did not rely." <u>Orn</u>, 495 F.3d at 630; *see also* <u>Connett</u>, 340 F.3d at 874.  The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th Cir. 2006)(quoting <u>Stout v. Comm'r</u>, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also* <u>Burch</u>, 400 F.3d at 679.

**DISCUSSION**

Plaintiff alleges the following three issues:  (1) whether the ALJ properly considered the opinion of physician Dr. Baham Chavoshan; (2) whether the ALJ properly considered the opinion of examining physician John Sedgh, M.D.; and (3) whether the ALJ properly considered plaintiff's subjective complaints.  (Joint Stip. at 4.)

**I.   The ALJ Did Not Properly Consider The Opinions Of Drs. Bahman Chavoshan And Uttan Reddy.**[5]

It is the responsibility of the ALJ to analyze evidence and resolve conflicts in the medical record.  <u>Benton v. Barnhart</u>, 331 F.3d 1030, 1040 (9th Cir. 2003); <u>Magallanes v. Bowen</u>, 881 F.2d 747, 750 (9th Cir. 1989).  In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion

---

[5]   Although the ALJ's evaluation of the opinion of Dr. Reddy was not raised specifically by plaintiff, Dr. Reddy's opinion, as noted *infra*, supports Dr. Chavoshan's opinion and does not appear to have been properly considered by the ALJ.

5

carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." <u>Holohan v. Massanari</u>, 249 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(d), 416.927(d); *see* <u>Carmickle v. Comm'r, Soc. Sec. Admin.</u>,553 F.3d 1155, 1164 (9th Cir. 2008)(noting that "[t]hose physicians with the most significant clinical relationship with the claimant are generally entitled to more weight than those physicians with lesser relationships").   "As such, the ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.' . . .   Where such an opinion is contradicted, however, it may be rejected for 'specific and legitimate reasons that are supported by substantial evidence in the record.'"   *Id.*(quoting <u>Lester v. Chater</u>, 81 F.3d 821, 830–31 (9th Cir. 1995)).

On October 23, 2009, Dr. Bahman Chavoshan, plaintiff's purported treating physician at Harbor-UCLA Medical Center, completed a one-page "Physical Capacities Evaluation" of plaintiff.   (A.R. 219.)   On this form, Dr. Chavoshan indicated that plaintiff can:  sit for five hours and stand for one hour in an eight-hour day; occasionally lift and carry up to five pounds; do no repetitive grasping, pushing and pulling of arm controls, and fine manipulation of the hands; do no repetitive pushing and pulling of his legs; and occasionally bend, squat, and reach.  (*Id.*) Plaintiff would have a mild limitation in exposure to marked changes in temperature and humidity and would be totally restricted from activities involving unprotected heights, being around moving machinery, and driving automotive equipment.   (*Id.*)   Dr. Chavoshan concluded that plaintiff could not work more than part-time due to chronic pain, fatigue, and the side effects from his medications.  (*Id.*)

The ALJ asserts that he gave "little, if any weight" to Dr. Chavoshan's opinion, because:   (1) there was no evidence of the frequency and type of treatment plaintiff received from Dr. Chavoshan; (2) Dr. Chavoshan did not indicate the basis upon which his opinion was made; and (3) Dr. Chavoshan's opinion was not supported by the evidence. (A.R. 25.)

First, the ALJ noted that there was no evidence of the "frequency and type of treatment Dr. Chavoshan" provided to plaintiff.  (A.R. 25.) Indeed, other than the one form, Dr. Chavoshan's name appears only one other time in the record, when Dr. Chavoshan refilled a prescription of Gabapentin for plaintiff.   (A.R. 246.)    Thus, based on the administrative record, there is insufficient evidence to support the conclusion that Dr. Chavoshan was plaintiff's treating physician, as opposed to merely an examining physician.  *See* 20 C.F.R. §§ 404.1502, 416.902 (defining a "treating source" as someone who provides medical treatment or evaluation and who has or has had "an ongoing treatment relationship with" the claimant, which means seeing the physician "with a frequency consistent with acceptable medical practice for the type of treatment or evaluation required for" the claimant's condition).

Further, an ALJ may discredit a treating physician's opinion if it is conclusory, brief, and unsupported by the record as a whole or by objective medical findings.  Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); *see also*, Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004)(upholding the ALJ's rejection of an opinion that was "conclusory in the form of a check-list," and lacked supporting clinical findings).

7

As there does not appear to be a treating relationship between Dr. Chavoshan and plaintiff, and Dr. Chavoshan's one-page evaluation of plaintiff was conclusory and brief, the ALJ may refuse to afford Dr. Chavoshan's opinion the same weight afforded to that of a treating physician.  However, Dr. Chavoshan's opinion cannot be ignored entirely on these grounds, particularly in view of the fact that:  (1) contrary to the ALJ's conclusion, the findings contained in Dr. Chavoshan's form are not inconsistent with the objective medical records, specifically, with those of plaintiff's treating physician Dr. Uttan Reddy; and (2) Dr. Chavoshan appears to be the only physician who had the opportunity to consider plaintiff's "abnormal" May 2009 EMG and nerve conduction studies when assessing plaintiff's functional limitations.  *See* Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984)(holding that it was error for an ALJ to ignore or misstate competent evidence in the record to justify his conclusion).

The ALJ erroneously gave little weight to Dr. Reddy's opinion, because it was not supported by "objective medical evidence, clinical signs and observations, and treating history."[6]  (A.R. 25.)  Dr. Reddy,

---

[6]     The ALJ's reasons for rejecting Dr. Reddy's opinion were not supported by substantial evidence.  First, contrary to the ALJ's contention, there was a treating history; Dr. Reddy was plaintiff's primary treating physician in 2008 and 2009.  Further, Dr. Reddy's treatment notes contained his own objective findings.  (*See* A.R. 166 (09/05/08 - plaintiff noted severe pain in both hands; Dr. Reddy suspected "Raynaud's OS" and may start "CCB if points to Raynauds"); A.R. 164 (11/03/08 – Dr. Reddy noted that "rheum workup [illegible] on last visit - negative"; as for plaintiff's bilateral hand pain, he will continue to observe and will "refer to ortho if pt progresses/develops contracture"); A.R. 162 (02/04/09 - Dr. Reddy noted "[u]nder etiology, pt has component of Raynauds syndrome and of early contracture (Dupuytren).  Will refer to ortho clinic . . . and will get x-rays"); A.R. 268 (03/27/09 - Dr. Reddy diagnosed plaintiff with bilateral hand pain and diabetes, noted that plaintiff "still [was] having similar

8

plaintiff's primary treating physician at UCLA-Harbor Medical Center in 2008 and 2009, determined plaintiff to be temporarily disabled from March 2009, until September 2009, due to "neuropathy of unclear etiology." (A.R. 178, 268.)  Dr. Reddy also referred plaintiff to an orthopedic hand specialist for additional diagnostic testing and evaluation. (A.R. 268 - Dr. Reddy noting "[r]eferral to ortho [h]and . . . will refer for nerve conduction studies . . . will give disability for 6 mos. given current determination.")

On May 13, 2009, plaintiff underwent EMG and nerve conduction studies that indicated: "Bilateral tibial and peroneal motor studies show decreased conduction velocities with normal latencies, somewhat borderline normal amplitudes.  R median motor onset is delayed, otherwise normal, as is R ulnar motor.  All sensory nerves tested were unobtainable.  EMG of select proximal and distal UE/LE muscles was normal." (A.R. 223.)  As such, it was an "[a]bnormal study.  Results are most consistent with a mixed sensorimotor polyneuropathy.  Given his h[istory], DM seems most likely cause . . . although differential would continue to include others, and clinical correlation is advised."[7] (A.R.

---

symptoms of feeling like he is walking on glass and feeling swollen cold hands although not [illegible] swollen or cold," and referred plaintiff to "ortho [h]and" for erve conduction studies for, *inter alia*, "possible undefined neuropathy.").)

[7]      While the ALJ discusses these findings in his decision, it appears the ALJ mistakenly believed that these tests were conducted on June 17, 2008, when plaintiff first presented for treatment at Harbor-UCLA Medical Center. (A.R. 23.)  Based on the ALJ's mistaken belief, he erroneously minimizes the results of the tests and concludes that the testing does not support the extent of plaintiff's limitations, because there was "no further confirmation of such diagnosis" and plaintiff was "discharged the same day with instructions on insulin injection and

1    224.)

2

3          Thus, this "abnormal study" and Dr. Reddy's findings demonstrate
4    that the ALJ failed to consider properly evidence which could support
5    Dr. Chavoshan's opinions.    While, at first blush, Dr. Chavoshan's
6    findings seem to be inconsistent with some of the treatment records,
7    that inconsistency appears to be a result of the chronic and recurrent
8    nature of plaintiff's condition.    As such, the ALJ's reasoning cannot
9    constitute a specific and legitimate reason for rejecting Dr.
10   Chavoshan's opinion.

11

12         Further, as noted *supra*, Dr. Chavoshan appears to be the only
13   physician of record who had the benefit of considering plaintiff's
14   "abnormal" May 2009 EMG and nerve conduction studies when assessing
15   plaintiff's functional limitations.    Indeed, Dr. Chavoshan's opinion is
16   the only one of record that was rendered after the completion of these
17   tests.[8]  Thus, the restrictions indicated by the nerve conduction and EMG
18   could very well support Dr. Chavoshan's limitations.

19

20         On remand, the ALJ must reconsider Dr. Chavoshan's opinion, as well
21   as the opinion of Dr. Reddy, particularly in view of the May 2009 EMG
22   and nerve conduction test results.    Should the ALJ again elect to give
23   these opinions no weight, he should set forth specific and legitimate
24   reasons for so doing.

25

26   ───────────────
27   proper administration."  (A.R. 23.)

28        [8]    Although the tests were conducted on May 13, 2009, it appears
     the results were not released until May 26, 2009.  (*See* A.R. 229.)

                                      10

II.   **The ALJ Failed To Give Specific And Legitimate Reasons For Rejecting Certain Limitations Found By Examining Physician Dr. John Sedgh.**

An ALJ may also reject the opinion of an examining physician by providing specific and legitimate reasons supported by substantial evidence in the record.   <u>Lester</u>, 81 F.3d at 830-31.

The ALJ gave "significant weight" to the opinion of consultative examiner Dr. John Sedgh and State agency physician Dr. K. Beig in assessing plaintiff's RFC.  (A.R. 24-25.)  However, the ALJ specifically rejected Dr. Sedgh's two hour walk/stand limitation in favor of Dr. Beig's opinion that plaintiff could walk/stand for six hours.  (*Id.*)  The ALJ rejected Dr. Sedgh's more restrictive stand/walk limitation, because:   (1) it was based on plaintiff's subjective complaints; and (2) it was inconsistent with Dr. Sedgh's own physical examination of plaintiff.   (A.R. 24.)   The ALJ's reasons are unpersuasive.

On May 12, 2009, Dr. Sedgh, after an examination of plaintiff's musculoskeletal system and upper and lower extremities, as well as a neurological exam, concluded as follows:

Diabetes. [Plaintiff] had subjectively decreased sensation in the lower extremities.   Gait is slightly to moderately antalgic.

From a functional standpoint, [plaintiff] can lift and carry

11

1   [twenty] pounds occasionally and [ten] pounds frequently. He

2   can stand and walk two hours in an eight-hour day with normal

3   breaks. He can sit for six hours in an eight-hour day.

4   Kneeling, crouching and stooping should be limited to

5   occasional. It is my opinion [plaintiff] does not need a cane

6   or any type of assistive device.

8   (A.R. 191.)

10  On May 26, 2009, after reviewing plaintiff's medical record,

11  including Dr. Sedgh's report, State agency reviewing physician Dr. Beig

12  opined that plaintiff could:    lift and/or carry twenty pounds

13  occasionally and ten pounds frequently; and stand, walk, and sit about

14  six hours in an eight-hour workday. (A.R. 195-201.)   Plaintiff had

15  unlimited push and pull abilities and could frequently climb

16  ramps/stairs, balance, stoop, kneel, crouch, and crawl but could only

17  occasionally climb ladders/ropes/scaffolds and balance. (A.R.

18  197.) Dr. Beig assessed no manipulative, visual, communicative, or

19  environmental limitations. (*Id.*)

21  The ALJ's first reason for rejecting Dr. Sedgh's stand/walk

22  limitation, *i.e.,* that it "appears" to be based on plaintiff's

23  "subjective complaints of decreased sensation in the lower extremities,"

24  is not legitimate and suggests a need for further development of the

25  record. (A.R. 24.) Although, as noted by the ALJ, Dr. Sedgh's physical

26  examination of plaintiff showed "generally normal results," Dr. Sedgh

27  also determined that plaintiff's gait was "slightly to moderately

28  antalgic." (A.R. 24, 187-91.)   This limitation could support Dr.

12

Sedgh's decision to limit plaintiff to only two hours of walking and standing.  To the extent the ALJ had any questions regarding what objective evidence supported Dr. Sedgh's limitation, the ALJ should have recontacted Dr. Sedgh in accordance with his duty to conduct an appropriate inquiry.  *See* 20 C.F.R. §§ 404.1512(e), 416.912(e) (noting that the administration "will seek additional evidence or clarification from your medical source when the report . . . from your medical source contains a conflict or ambiguity that must be resolved, [or] the report does not contain all the necessary information").

The ALJ also reasoned that Dr. Sedgh's two hour stand/walk limitation was inconsistent with his own physical examination of plaintiff, because Dr. Sedgh did not indicate evidence of muscle atrophy and also determined that plaintiff did not need a cane or any type of assistive device.  However, these reasons constitute a medical opinion that the ALJ is not qualified to make.  *See generally*, Tackett v. Apfel, 180 F.3d 1094, 1102-03 (9th Cir. 1999)(ALJ may not substitute his own interpretation of the medical evidence for the opinion of medical professionals); Banks v. Barnhart, 434 F. Supp.2d 800, 805 (C.D. Cal. 2006)(noting that an ALJ "'must not succumb to the temptation to play doctor and make [his] own independent medical findings'")(citing Rohan v. Chater, 98 F.3d 966, 970 (7th  Cir. 1996)).

Finally, rather than simply recontacting Dr. Sedgh for clarification of his opinion, the ALJ relied upon the opinion of a non-examining State physician.  However, in finding that plaintiff could walk/stand for six hours, Dr. Beig did not rely on any evidence that Dr. Sedgh had not considered.  (*See* A.R. 195-201.)  Therefore, Dr. Beig's

six hour walk/stand limitation, alone, cannot constitute substantial evidence, because it is not based on any independent findings, and the ALJ failed to give legitimate reasons for rejecting Dr. Sedgh's opinion. Andrews, 53 F.3d at 1041 (noting that where "a nontreating source's opinion contradicts that of the treating physician but is not based on independent clinical findings, or rests on clinical findings also considered by the treating physician, the opinion of the treating physician may be rejected only if the ALJ gives specific, legitimate reasons for doings so that are based on substantial evidence of record").

In any event, it appears that the ALJ's RFC assessment is not supported by substantial evidence. As discussed above, neither Dr. Sedgh nor Dr. Beig reviewed and analyzed the results of the May 2009 EMG and nerve conduction studies, and therefore, neither physician took these results into account. (*See* A.R. 187-91, 195-201.) If Drs. Sedgh and Beig had considered the nerve conduction study, their opinions may have been altered. Further, as noted above, the ALJ failed to consider the EMG and nerve conduct tests in the proper time frame, and if the ALJ had properly considered the test results, the ALJ also may have also reached a different conclusion.

Given the ALJ's substantial reliance on the opinions of Drs. Sedgh and Beig, whose opinions were rendered without review of relevant tests, and the ALJ's own improper independent consideration of the tests, which constituted legal error, the ALJ's RFC determination is not based on a proper and sufficiently complete picture of plaintiff's condition. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a) (a claimant's residual functional

14

capacity is an assessment based upon all of the relevant evidence); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) (medical expert opinions constitute substantial evidence only when they are supported by the record and consistent with it).

The Commissioner argues that, even if the ALJ erred in crediting Dr. Sedgh's stand/walk limitation, any error is harmless. (Joint Stip. at 15.)   However, the Court need not address this issue, because this case is being remanded for the reasons stated *supra*, and the ALJ's determination of plaintiff's RFC may change.

### III. **The ALJ Must Reconsider Plaintiff's Subjective Complaints.**

Based on the foregoing, there are several matters the ALJ needs to review and reconsider on remand.   As a result, the ALJ's conclusion regarding plaintiff's credibility may change.   When viewed fairly, the opinions of Dr. Chavoshan and Dr. Reddy, as well as the EMG and nerve conduction test results, may support plaintiff's complaints and alleged limitations, which the ALJ had deemed to be "out of proportion to the objective findings and observed functional restrictions."   (A.R. 22.) Accordingly, the Court does not reach plaintiff's third claim -- *to wit*, that the ALJ erred in finding plaintiff to be not credible.

On remand, the ALJ should have a physician review the EMG and nerve conduction studies and results, and take these findings into account in assessing plaintiff's limitations.   After doing so, the ALJ should view these findings in the light of the record as a whole and revisit his

consideration of the various medical opinions and plaintiff's credibility.   Further, to the extent plaintiff's RFC may need to be reassessed, additional testimony from a vocational expert likely will be required.

**IV.   Remand Is Required.**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000).   Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.   *Id.* at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings.").   However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate.   *Id.* at 1179-81.

Remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned deficiencies and errors.   *See, e.g.*, Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)(remand for further proceedings is appropriate if enhancement of the record would be useful); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989) (remand appropriate to remedy defects in the record).   On remand, the ALJ must correct the above-mentioned deficiencies and errors.

1

**CONCLUSION**

2

3          Accordingly, for the reasons stated above, IT IS ORDERED that the

4     decision of the Commissioner is REVERSED, and this case is REMANDED for

5     further proceedings consistent with this Memorandum Opinion and Order.

6

7          IT IS FURTHER ORDERED that the Clerk of the Court shall serve

8     copies of this Memorandum Opinion and Order and the Judgment on counsel

9     for plaintiff and for defendant.

10

11         LET JUDGMENT BE ENTERED ACCORDINGLY.

12

13    DATED:  March 27, 2013

14

15                                    _____

16                                          MARGARET A. NAGLE
                                      UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28

17